**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                              Criminal Action No. 5:14-cr-11

MUSTAFA M. BAZBAZ,

      Defendant.

**REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO SUPPRESS**

This matter comes before the Court on Defendant's Motion to Suppress Evidence filed on June 9, 2014.[1] The United States filed a Response in Opposition on June 24, 2014.[2] The Court held an evidentiary hearing and argument on Defendant's Motion to Suppress on July 25, 2014. Defendant appeared in person and by his counsel Chad D. Haught, Esq., and David A. Jividen, Esq. The United States of America (hereinafter "the Government") appeared by Robert H. McWilliams, in person. No testimony or other evidence was offered.

## I. INTRODUCTION

*A. Background*

Defendant is named in a two count indictment involving sexual activity with a minor. Defendant now moves this Court to suppress evidence seized from his residence.

*B. The Motions*

---

[1] Dkt. No. 46.

[2] Dkt. No. 59.

1. Plaintiff's Motion to Suppress Evidence

*C. Recommendation*

I recommend that Defendant's Motion to Suppress Evidence be **DENIED** because the affidavit underlying the search warrant was based upon information from the alleged crime victim, other citizen-witnesses, and other law enforcement officials and because the affidavit thoroughly detailed the corroborating investigation undertaken by law enforcement officers. Accordingly, when read as a whole, the affidavit clearly gave the magistrate judge who issued the warrant a substantial basis upon which to base her probable cause determination.

## II. FACTS

On or about December 7, 2013, the mother of M.N., a fifteen year old girl, became suspicious when M.N. returned home from a friends house early smelling of men's cologne. M.N. told her mother that she had been communicating through social media with someone she knew as Mike B. M.N. also told her mother that on December 6, 2013, Mike B. picked her up near her residence, drove her to a Holiday Inn in West Virginia, had sexual intercourse with her, and then drove her back home. M.N.'s mother discovered messages between M.N. and Mike B. on M.N.'s phone. M.N.'s mother contacted the local police, who notified FBI Task Force Officer ("TFO") Matt Harvey, a detective with the Hancock County Sheriff's Office, because the alleged sexual activity occurred in Hancock County. TFO Harvey, in turn, contacted FBI Special Agent Edward Ryan for assistance in investigating M.N.'s allegations.

M.N. told investigators and counselors that she started communicating with Mike B. via a website known as MeetMe.com and that Mike B. initially told her that he was 17 years old, but later told her that he was 23 years old. M.N. claimed that she told Mike B. she was 15 years old.

According to M.N., the two started communicating about sex via a texting application called Kik, and they eventually exchanged nude pictures. M.N. told investigators that Mike B. was driving a silver or grey colored Buick with a Pennsylvania registration. She also gave a description of Mike B. and detailed the events that occurred at the hotel.

TFO Harvey visited the Holiday Inn where the alleged sexual activity had taken place. The manager played a surveillance video for TFO Harvey, which showed a car matching the description provided by M.N. entering the parking lot and M.N. and a male subject matching the description given by M.N. entering the hotel through a side door. About an hour later, M.N. and the male subject exit the side door together and the silver car exits the parking lot. Hotel video also showed a male subject, matching M.N.'s description, checking in at the front desk of the hotel. TFO Harvey obtained hotel records, which identified the male subject as Mustafa Mormoun of Culver City, CA. The records also indicated that the male subject checked into the hotel at 8:57 p.m., which is the same time that video shows M.N. and a male subject entering the parking lot of the hotel. TFO Harvey also obtained Mustafa Mormoun's credit card information from the hotel.

SA Ryan searched investigative databases and social media sites and identified the male subject as Defendant. Investigators discovered a possible address for Defendant in Oakdale, Pennsylvania. On January 17, 2014, SA Ryan conducted surveillance on the address and observed a silver vehicle matching M.N's description of the vehicle parked outside of the apartment. The vehicle had an expired California registration. The apartment manager told investigators that Defendant had been residing in the apartment since August 26, 2013.

On February 7, 2014, FBI Special Agent Tanya Evanina, an agent assigned to the Western Pennsylvania Violent Crimes Against Children Task Force, applied for and received a search

warrant for Defendant's apartment. In her affidavit in support of the search warrant, SA Evanina stated that she had reason to believe that evidence of violations of Title 18, United States Code, Section 2423, which prohibits the transportation of a minor in interstate commerce with the intent to engage in criminal sexual activity, would be found in Defendant's Pennsylvania apartment. The basis for this belief is set forth in detail in the affidavit, prefaced with the following statement: "The facts set forth below are based upon your affiant's personal observations, reports and information provided to your Affiant by other law enforcement officials and obtained records. This affidavit is intended to show that there is probable cause for this search warrant and does not purport to set forth all of your Affiant's knowledge of our investigation into this matter." Beginning in paragraph eight of the affidavit, and continuing to paragraph twenty-one, SA Evanina summarized the underlying investigation into M.N.'s allegations. In paragraphs eight through ten, SA Evanina described in detail M.N's allegations about communicating with Defendant through social media and traveling to West Virginia with him to engage in sexual intercourse. Then, in paragraphs eleven through eighteen, SA Evanina detailed SA Ryan and TFO Harvey's ensuing investigation and attempt to identify Mike B. Finally, in paragraph nineteen, SA Evanina summarizes the "evidence that corroborates the allegations made by M.N."

Based on this affidavit, the magistrate judge issued a search warrant for Defendant's apartment. Investigators executed the search warrant on February 7, 2014 and seized an iPad, a laptop computer, a debit card, a Holiday Inn key card holder bearing room number 108, a cell phone, a digital camera, a cell phone receipt, and a sheet of paper containing names and email addresses. Defendant now moves this Court to suppress the evidence found in his apartment.

## III. MOTION TO SUPPRESS EVIDENCE

*A. Contentions of the Parties*

Defendant contends that SA Evanina's affidavit is based primarily on hearsay, but that SA Evanina does not distinguish between information that she observed first-hand and information that she obtained from other sources. As a result, Defendant argues, it is impossible to know from where SA Evanina obtained the information; therefore, the magistrate judge who issued the search warrant lacked sufficient information regarding the veracity, reliability, and basis of knowledge of persons providing SA Evanina with hearsay information. Defendant also contends that even where SA Evanina does credit her sources, she provides no information about the credibility, reliability, and basis of knowledge of those sources. Thus, Defendant argues, the affidavit does not provide sufficient facts upon which the magistrate judge could conclude that there was probable cause to believe that evidence of a crime would be found in Defendant's apartment. The United States, on the other hand, contends that the information in the affidavit comes not from "informants" or "tipsters," but from the alleged victim, the victim's mother, and other law enforcement officers who investigated the victim's claims, all of whom are entitled to a presumption of reliability. The United States also argues that rather than merely ratify the bare allegations of the alleged victim and her mother, the affidavit lays out the extensive corroboration of those allegations undertaken by law enforcement officers, which further serves to bolster the probable cause determination.

*B. Discussion*

Probable cause to search generally exists "'where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" *United States v. Hodge*, 354 F.3d 305, 309 (4th Cir.2004) (quoting *Ornelas*

*v. United States*, 517 U.S. 690, 696 (1996)). In reviewing the issuance of a search warrant, "great deference" is to be given to the judicial officer's probable cause determination. *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). The standard on review is whether substantial evidence supports the magistrate's decision to issue the warrant. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). Thus, the reviewing court does not conduct a *de novo* review of the magistrate's decision. *Id*. The sole question on review is whether, based on the totality of the circumstances, there was "a fair probability that contraband or evidence of a crime" would be found in Defendant's apartment. *Gates*, 462 U.S. at 238. A reviewing court must consider only "the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

"[H]earsay is not in and of itself illegitimate in an affidavit offered in support of an application for a search warrant." *United States v. Wylie*, 705 F.2d 1388, 1389 (4th Cir. 1983). Hearsay, even double hearsay, is sufficient to establish probable cause "so long as a substantial basis for crediting the hearsay is presented." *Jones v. United States*, 362 U.S. 257, 269 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 85 (1980); *United States v. Welebir*, 498 F.2d 346, 349 n. 2 (4th Cir.1974) ("[H]earsay, even 'second hearsay', may provide a legal basis for a search warrant."). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Defendant argues that the affidavit, and specifically paragraph eight, is insufficient because

SA Evanina "fails to distinguish in her affidavit where each allegation derives, whether the allegation was personally observed or received from another source, the individual or document who provided the information supporting the factual allegation, and the supporting circumstances of how she deemed the allegation reliable an/or credible." Defendant states:

> The special agent alleged that an investigation by the Wheeling Agency of the Federal Bureau of Investigation into alleged violations of Title 18, Section 2423(a) and (b) revealed that the defendant began communicating online with the alleged victim, M.N., a minor female who had not yet attained the age of 18 years. The special agent fails to identify in the Affidavit the individual from whom she learned of this allegation, fails to identify whether it was learned by her personally from the alleged victim or a specific member of the Federal Bureau of Investigations [sic], fails to identify how she believed the unknown individual and information was reliable and credible, and fails to identify any documents that support the allegation. Moreover, to date, no documents have been provided supporting the allegation that communications between M.N. and defendant occurred online.

Similarly, Defendant argues that SA Evanina's allegations regarding M.N. telling Defendant that she was only 15 years old and M.N. and Defendant exchanging nude pictures are unsupported because the affidavit states that M.N. told counselors this information, but SA Evanina "does not identify in the affidavit how or when she received the above information from counselors, the name of the counselors, why she believed the counselors were credible or reliable, why she believed M.N. was credible or reliable, nor are [there] any documents mentioned that support the information."

      Defendant's arguments lack merit for several reasons. First, SA Evanina was not required to affirmatively indicate whether each and every allegation in the affidavit was based on her first-hand observations or obtained from some other source because, when read as a whole, it is clear that the information in the affidavit was provided to SA Evanina by other law enforcement officers, who received their information directly from either M.N., M.N.'s counselors, or M.N.'s mother. *See, e.g.,*

*United States v. Ventresca*, 380 U.S. 102, 109-111 (1965) (rejecting a similar argument because, although the investigator preparing the affidavit "failed to clearly indicate which of the facts alleged therein were hearsay or which were within the affiant's own knowledge," he swore that the information was based in part upon personal observation and in part upon information obtained from other investigators and because, when read as a whole, it is clear that the observations reported by the affiant could only have come from other investigators and not from unnamed informants); *United States v. Reed*, 700 F.2d 638 (11th Cir. 1983) (concluding that where affidavit detailed an official investigation, facts outside knowledge of affiant were provided by other cooperating investigators). Here, not only did SA Evanina clearly indicate that the information in the affidavit was based upon reports and information provided by other investigators in the course of an official investigation into M.N.'s allegations, but it is abundantly clear from the affidavit that any facts not personally observed by SA Evanina had to have come from official accounts of the investigation.

Moreover, contrary to Defendant's contentions, SA Evanina was not required to identify the reasons that she believed M.N., her counselors, her mother, or other officers were reliable or credible because they are all entitled to a presumption of reliability. *United States v. Fooladi*, 703 F.2d 180, 183 (5th Cir.1983) ("[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case."); *Neiman v. Keane*, 232 F.3d 577 (7th Cir.2000) ("Complaints from putative victims about alleged crimes generally establish probable cause unless the complaint would lead a reasonable officer to be suspicious."); *United States v. Yusuf*, 461 F.3d 374, 385 (3rd Cir. 2006) ("[I]nformation received from other law enforcement officials during the course of an investigation is generally presumed to be reliable."). Here,

8

Defendant does not identify any special circumstances that would overcome this presumption of reliability. Additionally, although no additional corroboration of M.N.'s account was necessary, SA Evanina thoroughly documented investigators' significant corroboration of M.N.'s account including (1) business records confirming that Defendant rented a room at dates and times consistent with M.N.'s account; (2) financial records from PNC Bank confirming that a credit card owned by Defendant was utilized to rent a room at dates and times consistent with M.N.'s account; and (3) video from the Holiday Inn that was consistent with who M.N. advised she and Defendant entered the room, the location of the room, and the timeframe they entered and departed.

Similarly, Defendant's argument that double hearsay in the affidavit required "additional vetting before it was relied upon" lacks merit. All that is required in the case of double hearsay is that the magistrate judge have a substantial basis for crediting the hearsay at each level. *United States v. McCoy*, 478 F.2d 176, 179 (10th Cir.1973) ("As concerns so-called double hearsay ... when a magistrate receives an affidavit which contains hearsay on hearsay, he need not summarily reject this double hearsay information, but is rather called on to evaluate such information as well as all other information in the affidavit in order to determine whether the informant gathered his information in a reliable way and from reliable sources."). Here, any information SA Evanina received from other officers, which, in turn, came from M.N. or others, is double hearsay. However, as noted above, the other sources, all of which are clearly identified in the affidavit, are presumed reliable. Thus, the magistrate judge had more than a substanial basis for crediting the hearsay information in SA Evanina's affidavit.

## IV. RECOMMENDATION

Accordingly, the undersigned recommends that Defendant's Motion to Suppress Evidence

be **DENIED** because, based on the totality of the circumstances, the magistrate had a substantial basis for crediting the information provided by SA Evanina.

Because trial is imminent, any party who appears *pro se* and any counsel of record, as applicable, may, within **seven (7) days** after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: July 28, 2014

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE